# In the United States Court of Federal Claims

No. 23-944
(Filed Under Seal: October 4, 2023)
(Reissued for Publication: October 25, 2023)[1]

```
*************************************
KARTHIK CONSULTING, LLC,           *
                                   *
            Plaintiff,             *
                                   *
      v.                           *
                                   *
THE UNITED STATES,                 *
                                   *
            Defendant,             *
                                   *
      and                          *
                                   *
ZEN STRATEGICS LLC,                *
                                   *
            Defendant-Intervenor.  *
*************************************
```

*Abram John Pafford*, McGuireWoods LLP, Washington, DC, counsel for Plaintiff. With whom were *Edwin O. Childs*, and *Jessica L. Nejberger*, of counsel.

*Rebecca Sarah Kruser*, U.S. Department of Justice, Civil Division, Washington, DC, counsel for Defendant. With whom was *Richard W. Postma, Jr.*, Associate Counsel, Commercial & Administrative Law Division, of counsel.

*C. Peter Dungan*, Miles & Stockbridge P.C., Washington, DC, counsel for Defendant-Intervenor. With whom were *Adam A. Bartolanzo*, and *Lauren S. Fleming*, of counsel.

## OPINION AND ORDER

**Dietz, Judge.**

Plaintiff Karthik Consulting, LLC ("Karthik") protests a decision by the Department of Homeland Security ("DHS"), United States Citizenship and Immigration Services ("USCIS") to award a task order to defendant-intervenor Zen Strategics LLC ("Zen") after the Small Business Administration ("SBA") determined that Karthik was ineligible for award under the SBA's

---

[1] This Opinion and Order was filed under seal in accordance with the Protective Order entered on June 28, 2023. [ECF 8]. The parties were given an opportunity to identify protected information for redaction. The parties filed a joint status report on October 17, 2023. [ECF 48]. In the joint status report, the parties did not identify any protected information for redaction. *Id.*

Section 8(a) program. For the reasons explained below, the Court finds that the DHS's decision and the underlying SBA eligibility determination were rational, consistent with the solicitation terms, and compliant with applicable regulations. Accordingly, Karthik's motion for judgment on the administrative record ("MJAR") is **DENIED**, and the government's and Zen's cross-MJARs are **GRANTED**.

## I.    BACKGROUND

Karthik is a Virginia limited liability company headquartered in Falls Church, Virginia. Compl. [ECF 1] ¶ 10. "Karthik provides government customers with, among other things, software product and application support services, technical support and help desk services, cybersecurity services and solutions, and program management consultancy services." *Id.*

On February 23, 2022, the DHS notified the SBA of its offer to place a requirement for cyber security support services with the SBA under its Section 8(a) Business Development Program. AR 58.[2] The DHS stated its intent to award a hybrid Firm-Fixed-Price and Time-and-Materials contract as a "competitive 8(a) requirement." AR 59. It further stated that it had publicized its intent to issue the solicitation in its Acquisition Planning Forecast System ("APFS") and that "[t]he 8(a) vendors currently holding a contract under Highly Adaptive Cybersecurity Services (HACS) Special Item Number (SIN) 54151 vehicle have expressed interest." *Id.* In the APFS posting, dated December 1, 2022, the DHS stated that it would "require vendors to recertify that they are currently an active 8(a) vendor under the [General Services Administration ("GSA")] HACS contract vehicle for this requirement with quote submission." AR 68. The GSA HACS contract vehicle is a Multiple Award Schedule ("MAS") that is not exclusive to 8(a) contractors. AR 64; AR-4 1380.

The SBA accepted the DHS's offer on March 8, 2022. AR 61-62. The SBA instructed the DHS:

> Upon conclusion of your evaluation, directly advise the servicing [SBA] District Office of the apparent successful offeror. Your notice must include the firm's name, the anticipated award value for the first year, and the total dollar amount of the award. Additionally, the notice should include the date of the initial closing date of the competitive solicitation so that determination of eligibility can be made by SBA. Within five (5) business days of that notification, SBA will confirm the eligibility of the apparent successful offeror to receive the contract award and notify your office, in writing, of its determination. If the firm is found ineligible, SBA will inform you, in writing, of the firm's ineligibility and request that you provide the identity of the next highest evaluated firm for eligibility determination.

---

[2] The government filed four administrative records in this case. *See* [ECFs 17, 18, 20, 33]. The Court cites to the first administrative record at [ECF 17-2] as "AR __", the third administrative record at [ECFs 20-2, 20-3] as "AR-3 __", and the fourth administrative record at [ECF 33-2] as "AR-4 __".

AR 62. On December 13, 2022, the DHS issued Request for Quotation ("RFQ") No. 159989, a solicitation for Cyber Security Support Services (C3S) - Architecture ("the Solicitation"), *see* AR 82. The DHS sent the Solicitation to 138 vendors listed in the GSA's eBuy system. *See* AR 82. The Solicitation provided that quotes for the resultant task order would be submitted in two phases. AR 145. In Phase I, quoters would submit written responses to RFQ Factor 1 - Specialized Experience, and RFQ Factor 2 - Technical Approach. *Id.* Upon completion of its Phase I evaluation, the DHS would advise up to four of the most highly rated quoters to proceed to Phase II, although other quoters were not precluded from participating in Phase II if they wished. AR 148. In Phase II, the DHS would evaluate quoters under Factor 3 - Technical Challenge and Presentation, and Factor 4 - Price. AR 147-50. The DHS would then conduct a best value trade-off analysis and price reasonableness assessment. AR 153. The DHS was more concerned with performance rather than price but would not award the task order "to a quoter who present[ed] a considerably higher overall price to achieve only slight[ly] superior performance capabilities." *Id*.

Sections G8 and G11 of the Solicitation set forth requirements pertaining to the Section 8(a) status of the quoters. *See* AR 146, 150. Specifically, section G8 of the Solicitation stated:

> *The Quoter shall represent its 8(a) size and socioeconomic status at the time of their quote submission. The [Contracting Officer ("CO")] has the authority under 13 CFR 121.404(g)(3)(v) to request 8(a) size standard to be certified at the order level. This is being done to ensure the agency receives the 8(a) credit for this task order.*
> *Task order quotes that **are not** submitted by 8(a) quoters under GSA HACS MAS SIN 541151 8(a) at the time of initial task order quote submission, shall not be considered and will be further removed from the competition.*

AR 146 (emphasis in original). Further, section G11 stated:

> The government intends to award one (1) task order to one (1) GSA HACS MAS SIN 54151 8(a) Quoter. Prior to award, the Government [CO] will conduct a Dynamic Small Business Search (DSBS), pre-award check to verify the presumptive awardee's current 8(a) status. The purpose of this pre-award check [is] to validate the presumptive awardee's current 8(a) status as a part of the RFQ compliance review only and not to make HACS MAS schedule holders ineligible for award. This includes the [CO's] assessment on the need to refer a joint venture quoter to the Small Business Administration for size or socioeconomic status determination in the case when DSBS validation is not possible due to data integration delays. 8(a) participants must comply with [Federal Acquisition Regulation ("FAR")] 19.8 prior to the Government making an award.

AR 150.

On January 23, 2023, Karthik submitted its Phase I quotation. AR 286. Therein, it stated: "Karthik Consulting is a small-disadvantaged business and is represented as such in SAM.gov. Under the GSA HAC MAS SIN 54151 HACS 8(a), Karthik Consulting is represented as an 8(a) small business." AR 287. Following its evaluation of the Phase I submissions, the DHS notified Karthik and Autonomic Integra, LLC ("Autonomic") to proceed to Phase II. AR 558; *see also* AR 429-30. Although not notified to proceed, Zen submitted a Phase II quotation. AR 558. In its Phase II evaluation, the DHS awarded Karthik a "high confidence" rating for all three non-price factors. AR 561. The DHS awarded Zen a "high confidence" rating for Factors 1 and 3, and a "some confidence" rating for Factor 2. *Id.* Though it quoted the lowest price, Autonomic was deemed ineligible for an award due to its Factor 3 rating of "low confidence." AR 563.

On March 21, 2023, the DHS emailed the GSA, "attempting to understand the nuances of potentially awarding [to] Karthik Consulting if [it] outgrew [its] 8(a) status." AR 572. The DHS stated that the "GSA Track indicates that [Karthik is] an 8(a), but Sam.Gov reflects that [it has] graduated from the program." *Id*. In response, the GSA indicated that Karthik should have updated its "GSA Advantage file" to remove its 8(a) status and that Karthik would no longer "be identified as an 8(a) [f]irm with [the] GSA." *Id.*

The following day, the DHS formally asked the SBA to conduct an eligibility determination regarding Karthik's 8(a) status. AR 579. The SBA responded that Karthik was ineligible for award because it graduated from the 8(a) program in 2018. AR 578. The DHS replied to the SBA:

> While we understand that Karthik Consulting, LLC is no longer eligible as [it] graduated from the 8(a) program in 2018 based on your email notification below: as of this morning, Karthik Consulting, LLC still has an active long-term GSA HACS MAS SIN 54151 contract and is visible on the GSA eLibrary [as] an active SBA certified 8(a) firm. Furthermore, [it was] active and eligible at the time of the C3S – Architecture solicitation issuance on 12/13/22 and solicitation closing on 1/23/23 in the GSA e-buy system. Also, to my knowledge, Karthik Consulting, LLC has done nothing to change their 8(a) status and there has been no modification triggered by the GSA CO to change their 8(a) status.
>
> Based on the above and [in accordance with] FAR 19.804-6(d) & FAR 19.804-6(e); Karthik Consulting, LLC should still be eligible up until an executed modification is processed by [the] GSA CO to remove them from the [Governmentwide Acquisition Contract ("GWAC")] as being eligible.
>
> Additionally, in [its] quote, Karthik Consulting, LLC self-certif[ied] that [it was] eligible to receive 8(a) awards under this the GSA HACS MAS SIN 54151 contract: *"Karthik Consulting is a small-*

*disadvantaged business and is represented as such in SAM.gov. Under GSA HAC MAS SIN 54151HACS 8(a), Karthik Consulting is represented as an 8(a) small business."*

USCIS is seeking the following confirmation from the SBA that the SBA is going to do the following:
1. Notify the vendor that [it is] no longer eligible to receive 8(a) awards?
2. Confirm the applicability of FAR 19.804-6(d) as it relates to this requirement? If the GWAC still has [it] as eligible, even if [it] graduated?

AR 577-78 (emphasis in original). On March 23, 2023, the SBA answered the DHS:

**Karthik Consulting, LLC -** UEI: FGNNM7KNUPF6 graduated from the 8(a) December 10, 2018. Per your email below the solicitation closed 1/23/23. Per regulation attached (yellow highlight)- **For a competitive 8(a) procurement, a firm must be a current Participant eligible for award of the contract on the initial date specified for receipt of offers contained in the solicitation.** SBA accepted this competitive requirement March 2022 after Karthik has exited 8(a) Program. Karthik Consulting is not eligible to receive this contract.

AR 576-77 (emphasis in original).[3] The highlighted regulation attached to the SBA's answer was 13 C.F.R. § 124.501(h), which provides:

For a sole source 8(a) procurement, a concern must be a current Participant in the 8(a) [Business Development ("BD")] program at the time of award. If a firm's term of participation in the 8(a) BD program ends (or the firm otherwise exits the program) before a sole source 8(a) contract can be awarded, award cannot be made to that firm. This applies equally to sole source orders issued under multiple award contracts. For a competitive 8(a) procurement, a firm must be a current Participant eligible for award of the contract on the initial date specified for receipt of offers contained in the solicitation as provided in § 124.507(d).

AR-3 603B.

Upon receipt of this information, the DHS again asked the SBA if it was going to notify Karthik that it was ineligible to receive 8(a) awards and confirm the applicability of FAR 19.804-6(d), because the GWAC still listed Karthik as eligible even though it graduated. AR 576. The DHS also asked: "Since Karthik Consulting, LLC is still active on the GWAC, can USCIS OCON notify the GSA CO of the SBA's determination?" *Id.* Upon review of the relevant

---

[3] "A small business that is accepted into the 8(a) program is known as a 'participant.'" FAR 19.800(a).

GWAC, the SBA responded: "This is not an 8(a) exclusive vehicle and the firm should not have responded to the solicitation since [it] know[s] [it] ha[d] graduated from the 8(a) program." AR 574-75.

As a result of Karthik's ineligibility for award, on March 24, 2023, the DHS began price negotiations with Zen. AR 511-18. The DHS asked the SBA to conduct an eligibility determination regarding Zen's 8(a) status on March 29, 2023. AR 585-86. On April 5, 2023, the SBA notified the DHS that Zen was 8(a) eligible. AR 583. Thereafter, on April 7, 2023, the CO notified Zen that its offer had been selected. AR 708; *see also* AR 554-65 (Task Order Selection Official Decision). The same day, the CO notified Karthik that its offer had not been selected and provided a written post-award debrief. AR 709.

On April 17, 2023, Karthik filed a protest with the Government Accountability Office ("GAO"). AR 717-32. Karthik argued that the RFQ was not limited to quoters with active 8(a) status and that the DHS had applied unstated evaluation criteria. AR 717. On May 31, 2023, the GAO issued its decision. AR 1049-52. According to the GAO, the Solicitation terms relating to 8(a) status "are inconsistent on their face, which is to say that the [S]olicitation is, at best, patently ambiguous." AR 1051. The GAO then held that "[a] vendor that competes under a patently ambiguous solicitation does so at its own peril[] and cannot later complain when the agency proceeds in a manner inconsistent with one of the possible interpretations." AR 1051. Consequently, the GAO concluded that, because Karthik failed to question the DHS about a patent ambiguity within the Solicitation prior to award of the task order, Karthik's protest was untimely. AR 1052.

Karthik filed the instant protest on June 23, 2023. [ECF 1]. Karthik contends that the DHS's "decision to exclude Karthik and shift the award from Karthik to Zen [] was arbitrary, capricious, irrational, unsupported by the record, and contrary to law because both the Solicitation and FAR permitted 8(a) graduates like Karthik to compete for and receive the task order award." *Id*. at 13.[4] Karthik seeks, among other things, a declaratory judgment that the DHS's exclusion of Karthik from the procurement and award of the contract to Zen was arbitrary, capricious, and contrary to the law, as well as a Court order instructing the DHS to award the task order to Karthik. *Id*. at 21. Zen intervened on June 23, 2023. *See* Mot. to Intervene [ECF 5]. After the Court set a briefing schedule, Karthik filed its MJAR on July 14, 2023. [ECF 22]. Karthik filed an amended version of its MJAR on July 17, 2023. [ECF 23-1]. The government and Zen each filed oppositions to Karthik's MJAR and cross-MJARs on July 28, 2023. [ECFs 28, 29]. The motions are fully briefed, and the Court held oral argument on September 19, 2023. *See* Scheduling Order [ECF 45].

## II.    LEGAL STANDARDS

Under Rule 52.1 of the Rules of the United States Court of Federal Claims ("RCFC"), a party may file a MJAR to assess whether a federal administrative body acted in accordance with the legal standards governing the decision under review. *Agile Def., Inc. v. United States*, 143 Fed. Cl. 10, 17 (2019). This motion "is often an appropriate vehicle to scrutinize an agency's procurement actions because such cases typically involve interpretation of contract documents or

---

[4] All page numbers in the parties' briefings refer to the page numbers generated by the CM/ECF system.

regulations, thereby presenting no disputed issues of material fact." *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1352 (Fed. Cir. 2004). On such a motion, the parties are limited to the administrative record, and the court makes factual findings as if it were conducting a trial on the record. *Bannum, Inc. v. United States*, 404 F.3d 1346, 1357 (Fed. Cir. 2005). The court's inquiry is "whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." *A&D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006).

The court reviews agency decisions in bid protests using the standard of review set forth in the Administrative Procedure Act ("APA"). 28 U.S.C. § 1491(b)(4); *Impresa Construzioni Geom. Deomenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001). This standard permits the court to set aside an agency's contracting decision if the protestor shows it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Bannum*, 404 F.3d at 1351. "Under an arbitrary or capricious standard, the reviewing court should not substitute its judgment for that of the agency[] but should review the basis for the agency decision to determine if it was legally permissible, reasonable, and supported by the facts." *Glenn Def. Marine (Asia), PTE Ltd. v. United States*, 105 Fed. Cl. 541, 559 (2012) (citing *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). The protestor has the burden to show by a preponderance of evidence the arbitrary and capricious nature of the agency's decision. *Mortg. Contracting Servs., LLC v. United States*, 153 Fed. Cl. 89, 124 (2021).

While the APA standard calls for considerable deference to the agency, *Advanced Data Concepts, Inc. v. United State*s, 216 F.3d 1054, 1058 (Fed. Cir. 2000), the court may set aside an agency's procurement decision if it lacked a rational basis, or the procurement procedure involved a violation of regulation or procedure. *Impresa*, 238 F.3d at 1332; *see also Safeguard Base Operations, LLC v. United States*, 989 F.3d 1326, 1343 (Fed. Cir. 2021). Nevertheless, if the reviewing court finds that the agency's action evinced rational reasoning and consideration of relevant factors, it must sustain it. *Advanced Data Concepts, Inc.,* 216 F.3d at 1058 (citing *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285-86 (1974)).

## III.    DISCUSSION

Karthik argues that the DHS and the SBA had no lawful basis upon which to deem it ineligible for the task order award and that it was eligible under the Solicitation terms and the applicable 8(a) regulations. *See* [ECF 23-1] at 26-29. In response, the government challenges whether Karthik has standing to bring its protest and, if so, asserts that the DHS correctly followed the SBA's determination that relevant regulations made Karthik ineligible for award. *See* [ECF 28] at 22-26, 29-34. As explained below, the Court finds that Karthik has standing under the Tucker Act to protest the award of the task order to Zen. Nevertheless, the Court also finds that the DHS's award decision and the SBA's eligibility determination have a rational basis and are consistent with the terms of the Solicitation and the applicable regulations.

### A.      Karthik has Standing to Bring the Protest

The government argues that Karthik lacks standing to bring the protest because it is not an "interested party." [ECF 28] at 22. According to the government, although Karthik was an actual bidder, it did not have a substantial chance of being awarded the task order because the Solicitation required that quoters be current 8(a) program participants, which Karthik was not. *Id*. Therefore, the government argues, Karthik lacks the direct economic interest necessary to establish standing. *Id.*

To maintain a bid protest in this Court under the Tucker Act,[5] a protestor must establish its standing as an interested party in the procurement. 28 U.S.C. § 1491(b)(1); *accord Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003). A protestor is an interested party if it is "an actual or prospective bidder whose direct economic interest would be affected by the award of the contract." *Orion Tech., Inc. v. United States*, 704 F.3d 1344, 1348 (Fed. Cir. 2013). "In determining whether a protestor has alleged facts demonstrating the 'requisite direct economic interest,' the court must decide whether those alleged facts show the protestor was prejudiced by the alleged errors." *Blue Origin Fed'n, LLC v. United States*, 157 Fed. Cl. 74, 89 (2021) (citing *Statistica, Inc. v. Christopher*, 102 F.3d 1577, 1581 (Fed. Cir. 1996)). "To establish prejudice for standing purposes in a post-award bid protest, the protestor's complaint must show that there was a substantial chance it would have received the contract award but for the alleged error in the procurement process." *Id*. (internal quotation marks omitted). The Court assumes that the allegations in the complaint are true for the limited purpose of determining the protestor's standing. *Id.*

It is undisputed that Karthik is an actual bidder. Therefore, the Court need only determine whether Karthik adequately demonstrated that it would have had a substantial chance to receive the award but for the alleged errors by the DHS and the SBA. The Court finds that Karthik has met its burden. Assuming the allegations in the complaint are true, Karthik has shown that it had a substantial chance of being awarded the task order but for the government's wrongful determination that it was ineligible because it graduated from the 8(a) program in December 2018. *See* [ECF 1] ¶ 33 (alleging that Karthik is an 8(a) awardee under the MAS contract and therefore eligible to compete for the task order); ¶ 34 (alleging that Karthik submitted a timely Phase I proposal); ¶ 35 (alleging that the DHS advised Karthik to submit a Phase II proposal); ¶ 36 (alleging that Karthik submitted a timely Phase II proposal); ¶ 42 (alleging that the DHS decided to award the task order to Karthik). The record shows that the DHS was considering awarding the task order to Karthik and that, because of the SBA's determination that Karthik was ineligible for award due to its lack of current 8(a) status, the DHS awarded the task order to Zen. *See* AR 572, 511-18. Thus, Karthik has standing to challenge the determination that it was ineligible for award. *See CR/ZWS LLC v. United States*, 138 Fed. Cl. 212, 222-23 (2018) (holding that the protestor possessed a direct economic interest because, "absent the SBA's allegedly erroneous eligibility determination, [the protestor] would have had a substantial chance of being awarded the contract").

### B.     The DHS and the SBA Properly Determined that Karthik was Ineligible

---

[5] The Tucker Act grants this Court authority to render judgment on an action "by an interested party objecting to . . . any alleged violation of statute or regulation in connection with a procurement." 28 U.S.C. § 1491(b)(1).

Karthik argues that the "DHS and [the] SBA acted in a manner that was irrational, unreasonable, and contrary to law in deeming Karthik ineligible for award." [ECF 23-1] at 29. In Karthik's view, whereas the DHS's communications with Karthik throughout the procurement suggested that Karthik was an eligible 8(a) offeror, the DHS's ultimate determination that Karthik was ineligible for award rested entirely on the rationale provided by the SBA in a few conclusory emails. *See id.* at 34. Contrary to Karthik's position, the Court finds that the DHS's decision was in accordance with both the terms of the Solicitation and the applicable regulations governing the 8(a) program.

### 1.  Regulatory Framework

The SBA administers the 8(a) program "to assist eligible small disadvantaged business concerns compete in the American economy through business development."[6] 13 C.F.R. § 124.1.[7] Under the 8(a) program, the "SBA is authorized to enter into all types of contracts with other Federal agencies" and may "contract the performance of these contracts to qualified Participants." 13 C.F.R. § 124.501(a). The process by which those federal agencies evaluate a requirement for placement in the 8(a) program is stated in FAR 19.804. After the agency completes its evaluation of a requirement for placement under the 8(a) program, the procurement office notifies the SBA of the extent of its plans to place 8(a) contracts with the SBA in "an offering letter[,]" which details the prospective contract. FAR 19.804-2(a). Upon receipt of the offering letter, the SBA then decides whether to accept the requirement for the 8(a) program and informs the procurement office. FAR 19.804-3.

The SBA may enter into "set-asides, partial set-asides and reserves of Multiple Award Contracts and set-asides of orders issued against Multiple Award Contracts." 13 C.F.R. § 124.501(a). Further, "8(a) contracts may either be sole source awards or awards won through competition with other Participants." 13 C.F.R. § 124.501(b). "[F]or multiple award contracts not set aside for the 8(a) BD program, a procuring agency may set aside specific orders to be competed only among eligible 8(a) Participants[.]" *Id.* For competitive procurements under the 8(a) program, "[p]rocuring activities will conduct competitions among and evaluate offers received from Participants in accordance with the [FAR]." 13 C.F.R. § 124.507(a).

"In either a negotiated or sealed bid competitive 8(a) acquisition, the procuring activity will request that the SBA district office servicing the apparent successful offeror determine that firm's eligibility for award." 13 C.F.R. § 124.507(b). The "SBA determines a Participant's eligibility pursuant to § 124.501(g)." 13 C.F.R. § 124.507(b)(2). Section 124.501(g) states:

> Before a Participant may be awarded either a sole source or competitive 8(a) contract, SBA must determine that the Participant is eligible for award. SBA will determine eligibility at the time of its

---

[6] A concern may participate in the program "if it is a small business which is unconditionally owned and controlled by one or more socially and economically disadvantaged individuals who are of good character and citizens of and residing in the United States, and which demonstrates potential for success." 13 C.F.R. § 124.101.

[7] The Court cites to the versions of the Code of Federal Regulations in effect at the time of the relevant DHS and SBA actions. Although certain regulations cited herein were amended on May 30, 2023, the amendments do not alter the Court's analysis or conclusions.

> acceptance of the underlying requirement into the 8(a) BD program
> for a sole source 8(a) contract, and after the apparent successful
> offeror is identified for a competitive 8(a) contract. . . . In any case
> in which an 8(a) Participant is determined to be ineligible, SBA will
> notify the 8(a) Participant of that determination.

13 C.F.R. § 124.501(g). If the SBA "determines that the apparent successful offeror is ineligible, SBA will notify the procuring activity. The procuring activity will then send to SBA the identity of the next highest evaluated firm for an eligibility determination. The process is repeated until SBA determines that an identified offeror is eligible for award." 13 C.F.R. § 124.507(b)(3). The "SBA determines whether a Participant is eligible for a specific 8(a) competitive requirement as of the date that the Participant submitted its initial offer which includes price." 13 C.F.R. § 124.507(b)(4).

> 2.    *The DHS and the SBA Adhered to the Solicitation Terms and Applicable Regulations*

The record shows that the DHS and the SBA conducted the procurement consistent with the Solicitation terms and applicable regulations. The DHS began the procurement process by issuing an offer letter to the SBA seeking to place its requirement for cyber security services with the 8(a) program, pursuant to FAR 19.804-2(a). AR 58. The DHS specified that it intended to conduct a competitive procurement among currently eligible 8(a) vendors. AR 59, 68. The SBA accepted the DHS's offer under FAR 19.804-3(a). AR 61-62. The DHS then issued the Solicitation. AR 82.

The Solicitation stated that the "government intends to award one (1) task order to one (1) GSA HACS MAS SIN 54151 8(a) Quoter." AR 150. It required that each quoter "represent its 8(a) size and socioeconomic status at the time of their quote submission" and stated that "[t]ask order quotes that are not submitted by 8(a) quoters under GSA HACS MAS SIN 541151 8(a) at the time of initial task order quote submission, shall not be considered and will be further removed from the competition." AR 146. It further stated that, prior to award, the CO "will conduct a Dynamic Small Business Search (DSBS), pre-award check to verify the presumptive awardee's current 8(a) status." AR 150.

Upon identifying Karthik as the apparent successful offeror, the DHS asked the SBA to determine whether Karthik was eligible for award under 13 C.F.R. § 124.507(b). AR 579. The SBA informed the DHS that, because Karthik graduated from the 8(a) program in 2018, it was no longer an eligible 8(a) participant. AR 578. The SBA further explained, under 13 C.F.R. § 124.501(h):

> For a competitive 8(a) procurement, a firm must be a current
> Participant eligible for award of the contract on the initial date
> specified for receipt of offers contained in the solicitation. SBA
> accepted this competitive requirement March 2022 after Karthik
> has exited 8(a) Program. Karthik Consulting is not eligible to
> receive this contract.

10

AR 577. In response to a question about FAR 19.804-6(d), which states that an 8(a) contractor may continue to accept new orders under a contract even if it exits the 8(a) program, the SBA explained that the underlying HACS MAS contract "is not an 8(a) exclusive vehicle." AR 574. Additionally, the SBA referenced 13 C.F.R. § 124.502, which requires that "a procuring activity contracting officer must submit an offering letter for each intended 8(a) procurement, including . . . competitive 8(a) orders issued under non–8(a) multiple award contracts[.]" *Id.*; 13 C.F.R. § 124.502(a)(1). Since the relevant task order was subject to a competitive 8(a) procurement under a non-exclusive multiple award contract vehicle, FAR 19-804-6(d) did not apply.

Having concluded that Karthik was ineligible for award, the DHS then identified Zen as the next apparent successful offeror and asked the SBA to perform an eligibility determination for Zen under 13 C.F.R. § 124.507(b)(3). AR 585-86. The SBA notified the DHS that Zen was eligible to receive 8(a) awards, and the CO awarded the task order to Zen. AR 583, 708. Karthik fails to demonstrate how either the DHS's conduct of the procurement or the SBA's eligibility determination was arbitrary, capricious, or contrary to law.[8]

### 3. Karthik's FAR 19.804-6 Arguments Are Unpersuasive

Karthik argues that "[i]n the context of competitive 8(a) set-aside task order awards under MAS [Indefinite-Delivery, Indefinite Quantity ("IDIQ"] contracts, FAR 19.804-6(d) & (e) provide a safe harbor for companies that obtain their seat on the contract as an 8(a) awardee, and then graduate from or exit the 8(a) program during the base period of contract performance." [ECF 23-1] at 27. Karthik asserts that "[s]uch companies are given the continued right to compete for and receive 8(a) task order awards . . . even where the task order awardee has graduated from the 8(a) program." *Id.* Thus, Karthik contends that the DHS acted irrationally and inconsistently with the applicable regulations when it "adopted SBA's incorrect and unsupported assertion that Karthik's status as an 8(a) graduate rendered Karthik ineligible for the task order award." *Id.* at 29. Karthik's argument does not comport with a plain reading of FAR 19.804-6.

"When interpreting regulations, we apply the same interpretative rules we use when analyzing the language of a statute." *Boeing Co. v. Sec'y of Air Force*, 983 F.3d 1321, 1327 (Fed. Cir. 2020) (citing *Mass. Mut. Life Ins. Co. v. United States*, 782 F.3d 1354, 1365 (Fed. Cir. 2015)). The Federal Circuit has consistently held that "when interpreting statutes or regulations, '[t]he plain meaning that we seek to discern is the plain meaning of the whole statute [or regulation], not of isolated sentences.'" *Id.* (quoting *Beecham v. United States*, 511 U.S. 368, 372 (1994)). The Court considers "the plain language of the regulation, the common meaning of the

---

[8] Karthik also contends that when the DHS and the SBA deemed it ineligible for award because it graduated from the 8(a) program in December 2018, they made an improper award decision based on unstated evaluation criteria. [ECF 23-1] at 33-34. To prevail on an argument that an agency used an unstated evaluation criterion, a protestor must show that the agency used a significantly different basis in evaluating the proposals than was disclosed and that the protester was prejudiced. *XL Assocs., Inc. v. United States*, 155 Fed. Cl. 726, 732 (2021) (citing *NEQ, LLC v. United States*, 88 Fed. Cl. 38, 48 (2009)). Karthik has not shown that the DHS used a significantly different basis in evaluating its proposal than disclosed in the Solicitation. Rather, the record shows that the DHS properly removed Karthik from the competition after it learned that Karthik was not an 8(a) quoter at the time of its initial task order quote submission as required by the Solicitation terms. *See* AR 146, 150.

terms, and the text of the regulation both as a whole and in the context of its surrounding sections." *Aqua Prods., Inc. v. Matal*, 872 F.3d 1290, 1316 (Fed. Cir. 2017).

FAR 19.804-6 applies the SBA's 8(a) program offer and acceptance process to multiple-award contracts as follows:

> (a)    Separate offers and acceptances are not required for individual orders under multiple-award contracts (including the Federal Supply Schedules managed by GSA, multi-agency contracts or Governmentwide acquisition contracts, or indefinite-delivery, indefinite-quantity (IDIQ) contracts) that have been set aside for exclusive competition among 8(a) contractors, and the individual order is to be competed among all 8(a) contract holders. SBA's acceptance of the original contract is valid for the term of the contract. *Offers and acceptances are required for individual orders under multiple-award contracts that have not been set aside for exclusive competition among 8(a) contractors.*

> \* \* \*

> (d)    An 8(a) contractor may continue to accept new orders under the contract, even if it exits the 8(a) program, or becomes other than small for the NAICS code(s) assigned to the contract.

> (e)    Agencies may continue to take credit toward their prime contracting small disadvantaged business or small business goals for orders awarded to 8(a) contractors, even after the contractor's 8(a) program term expires, the contractor otherwise exits the 8(a) program, or the contractor becomes other than small for the NAICS code(s) assigned under the 8(a) contract.

FAR 19.804-6(a), (d)-(e) (emphasis added). Karthik's argument that FAR 19.804-6(d) and (e) provide it a safe harbor ignores the clause at the end of subsection (a). Under subsection (a), separate offers and acceptances are not required for individual orders under multiple-award contracts that have been set aside for exclusive competition among 8(a) contractors. However, if the multiple award contract is, like the HACS MAS contract, not an exclusive 8(a) set-aside, offers and acceptances are required for individual task orders.

Interpreting the regulation as establishing a safe harbor for multiple-award contracts not set aside for 8(a) contractors would render subsection (a) superfluous because those contracts require a separate SBA offer and acceptance for task orders. FAR 19.804-6(a) ("Offers and acceptances *are required* for individual orders under multiple-award contracts that have not been set aside for exclusive competition among 8(a) contractors.") (emphasis added). Although

subsection (d) permits former 8(a) contractors to accept new orders under the contract, it applies only where the multiple-award contract, not the task order contract, was set aside for 8(a) contractors. In exclusive 8(a) set aside multiple-award contracts, the SBA's acceptance of the contract "is valid for the term of the contract." FAR 19.804-6(a). Multiple-award contracts that are not exclusively set aside for 8(a) contractors do not enjoy that acceptance. Thus, a plain reading of FAR 19.804-6(d) does not provide a safe harbor to Karthik. *See Roberto v. Dep't of Navy*, 440 F.3d 1341, 1350 (Fed. Cir. 2006) ("When construing a regulation or statute, it is appropriate first to examine the regulatory language itself to determine its plain meaning.").[9]

In this case, because the HACS MAS contract was not set aside as an exclusive 8(a) vehicle—a fact Karthik does not appear to dispute—the DHS was required to submit a separate offer to the SBA for the individual task order and to obtain a separate acceptance from the SBA, and Karthik was not entitled to accept new orders under the HACS MAS contract pursuant to FAR 19.804-6(d). Moreover, because the resulting Solicitation required that offerors be current 8(a) contractors on the date they submitted their offers, AR 146, 150, the DHS's determination that Karthik was ineligible to compete for the task order on January 23, 2023, since it graduated from the 8(a) program in 2018, was appropriate.[10]

Karthik also argues that "[t]hese FAR provisions are consistent with the general SBA rule that an 8(a) awardee under an MAS contract remains an '8(a) Participant' for the life of the

---

[9] This plain reading is supported by the history of FAR 19.804-6. Since its introduction in 1999, the clause has used the term "the contract" throughout its subsections. Reading it as a whole, "the contract" refers to the "multiple award or FSS contracts" referenced in subsection (a). FAR 19.804-6(a) (1999). Subsection (a) starts with the "separate offers and acceptances" clause, followed by the "SBA's acceptance" clause providing that such acceptance is "valid for the term of *the contract*." *Id.* (emphasis added). Subsection (d), then subsection (c), mirrored the contract types in subsection (a) and collectively referenced them as "the contract." *Compare* FAR 19.804-6(a) (2007) ("Separate offers and acceptances must not be made for individual orders under *multiple award,* [*FSS*]*, multi-agency contracts or Governmentwide acquisition contracts*.") (emphasis added), *with* FAR 19.804-6(c) (2007) ("An 8(a) concern may continue to accept new orders under a *multiple award,* [*FSS*]*, multi-agency contract or Governmentwide acquisition contract*[.]") (emphasis added). With the 2017 revision, FAR 19.804-6(a) differentiated between exclusive 8(a) set aside and non-exclusive multiple award contracts. FAR 19.804-6(a) (2017). However, the language for non-exclusive multiple award contracts was placed *after* the sentence ending with "the contract[,]"excluding "multiple-award contracts that have not been set aside for exclusive competition among 8(a) contractors." *Id.* The 2017 revisions also modified subsection (b), now subsection (d), replacing the original list of contract types with "the contract." *See* FAR 19.804-6(b) (2017) ("An 8(a) contractor may continue to accept new orders under *the contract*, even if it exits the 8(a) program, or becomes other than small for the NAICS code assigned to the contract.") (emphasis added). The term "the contract" thus always referred to exclusive 8(a) set aside multiple award contracts.

[10] This conclusion is supported by 13 C.F.R. 124.503(i)(2), which provides:

> [F]or an order issued to an 8(a) Participant and placed against a Multiple Award Contract to be considered an 8(a) award, where the Multiple Award contract was not initially set-aside, partially set-aside or reserved for exclusive competition among 8(a) Participants . . . SBA must verify that a concern is an eligible 8(a) Participant in accordance with § 124.501(g) as of the initial date specified for the receipt of offers contained in the order solicitation[.]

It further provides that if a concern has exited the 8(a) program prior to that date, it will be ineligible for award of the order. 13 C.F.R. 124.503(i)(2)(iv). Because Karthik graduated from the 8(a) program prior to the initial date specified in the Solicitation for receipt of offers, the SBA properly determined that Karthik was ineligible for award.

contract[] and is entitled to compete for and receive task orders thereunder." [ECF 23-1] at 27 (citing 13 C.F.R. § 124.521(e)(1)). This argument is similarly unavailing. Section 124.521(e)(1) provides:

> [A] concern that is an eligible 8(a) Participant at the time of initial offer or response, which includes price, for an 8(a) contract, including a Multiple Award Contract, is considered an 8(a) Participant throughout the life of that contract. For an indefinite delivery, indefinite quantity (IDIQ), Multiple Award 8(a) Contract, where concerns are not required to submit price as part of the offer for the contract, a concern that is an eligible 8(a) Participant at the time of initial offer, which may not include price, is considered an 8(a) Participant throughout the life of that contract. This means that if an 8(a) Participant is qualified at the time of initial offer for a Multiple Award 8(a) Contract, then it will be considered an 8(a) Participant for each order issued against the contract, *unless a [CO] requests a new 8(a) eligibility determination in connection with a specific order.*

13 C.F.R. § 124.521(e)(1) (emphasis added). In other words, under § 124.521(e)(1), when a business concern qualifies as an 8(a) participant at the time of initial offer under a multiple award contract, it is eligible to compete for individual task orders under the multiple award contract and retains its 8(a) status throughout the life of the contract vehicle unless the CO asks for a new 8(a) determination in connection with that task order. That is exactly what happened in this case. The DHS CO requested that the SBA perform a new 8(a) eligibility determination to determine Karthik's 8(a) status at the time of initial task order quote submission. This conduct was consistent with the Solicitation terms and the applicable regulations.

## IV.   CONCLUSION

For the reasons explained above, Karthik's MJAR [ECF 22] is **DENIED**, the government's cross-MJAR [ECF 28] is **GRANTED**, and Zen's cross-MJAR [ECF 29] is **GRANTED**. The Clerk is **DIRECTED** to enter judgment accordingly.

Karthik requests that the Court enter a permanent injunction enjoining the DHS from proceeding with the award and ordering it to award the task order to Karthik, or alternatively, ordering the DHS to re-evaluate the proposals and make a new award. [ECF 1] at 21. When deciding if a permanent injunction is warranted, the Court considers whether: "(1) the plaintiff has succeeded on the merits, (2) the plaintiff will suffer irreparable harm if the court withholds injunctive relief, (3) the balance of hardships to the respective parties favors the grant of injunctive relief, and (4) the public interest is served by a grant of injunctive relief." *Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009). Achieving success on the merits "is a necessary element for a permanent injunction[.]" *Dell Fed. Sys. v. United States*, 906 F.3d 982, 999 (Fed. Cir. 2018). In this case, Karthik has not succeeded on the merits, so it is not entitled to a permanent injunction.

Some information contained in this Opinion and Order may be considered protected information subject to the Protective Order entered on June 28, 2023, [ECF 8]. Accordingly, the Opinion and Order is filed **UNDER SEAL**. The parties **SHALL CONFER AND FILE**, on or before October 18, 2023, a joint status report that (i) identifies the information, if any, that the parties contend should be redacted, (ii) explains the basis for each proposed redaction, and (iii) includes an attachment of the proposed redactions for this Opinion and Order.

**IT IS SO ORDERED.**

s/ Thompson M. Dietz
THOMPSON M. DIETZ, Judge